**PHILIP MORRIS USA INC., Plaintiff,**

v.

**A & V MINIMARKET, INC., a New York corporation doing business as A & V Minimarket, et al., Defendants.**

No. 07 Civ. 8359(LAK)(GWG).

United States District Court, S.D. New York.

Jan. 7, 2009.

Jennifer L. Larson, Heller Ehrman, LLP, Sara Kate Pildis, Arnold & Porter, LLP, New York, NY, James Gerard Ryan, Marianne McCarthy, Cullen and Dykman, LLP, Garden City, NY, John C. Ulin, Arnold & Porter LLP, Los Angeles, CA, Krista Harris Cheatham, Heller Ehrman LLP, Washington, DC, for Plaintiff.

Carl E. Person, Carl E. Person-An Individual Practitioner, New York, NY, Stephen W. Edwards, Law Offices of Stephen W. Edwards, Brooklyn, NY, for Defendants.

## ORDER

LEWIS A. KAPLAN, District Judge.

Plaintiff's motions for default judgments [docket items 76 and 85] are granted for the reasons indicated in the report and recommendation of Magistrate Judge Gorenstein to which no objection has been filed.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

### I. *BACKGROUND*

Plaintiff Philip Morris USA Inc. ("Philip Morris") has sued the operators of 49 grocery stores and other retail establishments for selling counterfeit Marlboro cigarettes. Philip Morris has made claims of trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, and has also made various related claims under New York State law. *See* Complaint, filed Sept. 26, 2007 (Docket # 1) ("Compl.").

A number of defendants were served but failed to answer. *See* Affidavits of Service,

filed Oct. 18, 2007 (Docket # 4); Affidavit of Service, filed Oct. 19, 2007 (Docket # 5).[1] Philip Morris has brought two separate motions for default judgment against those defaulting defendants with whom it has not settled.[2] Thus, we consider the motions only as to these 31 defendants. A Clerk's Certificate of Default has been provided with respect to each of them. *See* Clerk's Certificates of Default, annexed as Ex. C to Ryan Aff.; Clerk's Certificates of Default, annexed as Ex. C to McCarthy Aff.

Prior to the filing of these motions, the Court issued an Order setting forth the procedure to be used for any motion for a default judgment. *See* Scheduling Order for Motion for Default Judgment and Damages Inquest, dated June 10, 2008 (Docket # 58), ¶¶ 1–7. The Order re-

---

1. The defaulting defendants are: (1) La Favorita Deli Grocery Corp., a corporation d/b/a La Favorita Deli Grocery; (2) Uptown Deli & Grocery Corp., a New York corporation d/b/a Taiz Grocery; (3) I & I Convenience Store Inc., a New York corporation d/b/a I & I Convenience Store; (4) TW Deli & Grocery Corp., a New York corporation d/b/a Jerome Deli Grocery; (5) Leena Deli & Grocery Corp., a New York corporation d/b/a Leena Deli & Grocery; (6) Menzal S. Azookari, individually and d/b/a Southern Blvd. Deli; (7) Bronx # 1 Discount Grocery Corp., a New York corporation d/b/a N.Y. # 1 Discount Grocery; (8) Adel Elsaidi, individually and d/b/a N.Y. Best Deli Grocery; (9) R H S Grocery, Inc., a New York corporation d/b/a RHS Deli Grocery; (10) University Deli & Grocery Corp., a New York corporation d/b/a University Deli; (11) A & V Minimarket, Inc, a New York corporation d/b/a A & V Minimarket; (12) Gold Mine Grocery, Inc., a New York corporation d/b/a Goldmine Grocery; (13) Inkona News Stand, Inc., a New York Corporation d/b/a Ink On A; (14) Mannys Mini Market, Inc., a New York corporation d/b/a Mannys Mini Market; (15) Matthew Food Center Corp., a New York corporation d/b/a Matthew Deli Food Center; (16) 315 Grocery Corp., a New York corporation d/b/a 315 Grocery and Candy; (17) Antero Olivo and Secindino Olivo, individually and d/b/a Olivo Grocery; (18) Haaji Deli Grocery Inc., a New York corporation d/b/a Paradise Deli Grocery; (19) Unknown Business Entity, d/b/a S & P News; (20) Majmud Salej, individually and d/b/a Salej Grocery; (21) Sammy's II Deli Grocery Inc., a New York corporation d/b/a Sammy's II Deli Grocery Inc.; (22) San Juan Food Market, Inc., a New York corporation d/b/a San Juan Food Market; (23) Waddah Almarwri, individually and d/b/a W.A. Deli Grocery; (24) Steven Deli Supermarket Corp., a New York corporation d/b/a Steven Deli Market; (25) Vega's Deli Grocery Inc., a New York corporation d/b/a New Watson Food Market; (26) Gamil Hassan, individually and d/b/a West Farm Deli Grocery; (27) JJP Food Center Inc., a New York corporation d/b/a 1086 JJP Food Center Inc.; (28) 394 Grocery Corp., a New York corporation d/b/a 394 Grocery; (29) 676 Castle Hill Gomez Grocery Corp., a New York corporation d/b/a 676 Castle Hill Deli; (30) Gourmet Deli Grocery Corp., a New York corporation d/b/a Gourmet Deli; (31) Hafiz Abdulla Saidi, individually and d/b/a Jumbo Deli Grocery; (32) K & G Deli Grocery, Inc, a New York corporation d/b/a K & G Deli; and (33) 456 East W.A. Deli & Grocery Inc., a New York corporation d/b/a WA Grocery.

   After the motions for a default judgment were filed, Philip Morris informed the Court that it had settled with defendants Hafiz Abdulla Saidi d/b/a H.A. Saidi Grocery Deli and Jumbo Deli Grocery, Gourmet Deli Grocery Corp., a New York corporation d/b/a Gourmet Deli.

2. *See* Notice of Motion, filed Aug. 5, 2008 (Docket # 76), at 2; Affidavit of James G. Ryan in Support of Motion for Default Judgments Against Certain Defendants on Behalf of Philip Morris USA, filed Aug. 5, 2008 (Docket # 77) ("Ryan Aff."); Memorandum of Law in Support of Plaintiff's Motion for Default Judgement Against Certain Defendants, filed Aug. 5, 2008 (Docket # 78) ("Pl. 8/5/08 Mem."), at 1; Notice of Motion, filed Sept. 26, 2008 (Docket # 85); Affidavit of Marianne McCarthy in Support of Motion for Default Judgments Against Certain Defendants on Behalf of Philip Morris USA, filed Sept. 26, 2008 (Docket # 87) ("McCarthy Aff."); Memorandum of Law in Support of Plaintiff's Second Motion for Default Judgement Against Certain Defendants, filed Sept. 26, 2008 (Docket # 86) ("Pl. 9/26/08 Mem.").

quired Philip Morris to make certain submissions supporting their request for default and damages against defendants. *See id.* ¶¶ 1–4. The Order also gave each defendant 30 days from the date of Philip Morris's papers to respond. *See id.* ¶ 6. The Order further notified all parties that, absent a request from either side that the Court hold a hearing, the Court would conduct any inquest regarding damages based solely upon the parties' written submissions. *Id.* ¶ 7. A copy of the Order was mailed to defendants at their addresses of service at the time the motions for default judgment were served. *See* Affidavit of Marianne McCarthy in Further Support of Motion for Default Judgment Against Certain Defendants, filed Dec. 4, 2008 (Docket # 92). No defendant submitted a response to the motions for default by the deadline provided in the Order, or at any time since.

■■■■ Philip Morris is entitled to a judgment by default by virtue of the defendants' failure to answer the complaint or otherwise defend against the lawsuit. *See* Fed.R.Civ.P. 55(b). The only question remaining is what relief should be given to Philip Morris by way of damages and injunctive relief. The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence "as long as [the Court has] ensured that there was a basis for the damages specified in [the] default judgment." *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir.1989); *accord Transatl. Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997); *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir.1991), *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992). As Philip Morris's submissions provide such a basis, no hearing is required.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

■■■■ In light of the defendants' default, Philip Morris's properly-pleaded allegations, except those relating to damages, are accepted as true. *See, e.g., Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993) ("factual allegations are taken as true in light of the general default judgment"); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Time Warner Cable of N.Y. City v. Barnes,* 13 F.Supp.2d 543, 547 (S.D.N.Y.1998). The following findings of fact and conclusions of law are based on the complaint's allegations regarding liability and the admissible evidence regarding damages in Philip Morris's submissions.

### A. Facts Relating to Liability

Philip Morris is a corporation organized under Virginia law with its principal place of business in Richmond, Virginia. Compl. ¶ 7. Cigarettes sold under Philip Morris's Marlboro and related marks are heavily promoted and advertised. *Id.* ¶ 10. The marks are among the most widely recognized in the United States. *Id.* ¶ 10. Four marks have been registered in connection with cigarette sales and Philip Morris has been using the marks extensively and continuously in connection with the sale of its goods. *Id.* ¶ 11. Retail stores sell Marlboro cigarettes throughout the United States. *Id.* ¶ 12.

Defendants operate grocery stores, food marts, delicatessens and similar retail establishments. *See* Ex. A. to Compl. Between March and June 2007, Philip Morris employed purchasers who bought one or more counterfeit packs of cigarettes from each defendant's retail establishment. Compl. ¶¶ 13–14. The counterfeit cigarettes were of inferior quality to genuine

Marlboro cigarettes and were likely to disappoint customers who purchased the cigarettes expecting genuine Marlboro cigarettes. *Id.* ¶ 15.

## B. Statutory Damages
### 1. Applicable Law

Philip Morris seeks monetary damages for trademark infringement. The Lanham Act provides:

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Section 1117(c) was enacted to address the difficulty of calculating actual damages caused by counterfeiters. *See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* 2007 WL 3287368, at *3 (S.D.N.Y. Nov. 7, 2007); *Rodgers v. Anderson,* 2005 WL 950021, at *2 (S.D.N.Y. Apr. 26, 2005) ("The rationale for this section is the practical inability to determine profits or sales made by counterfeiters."); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 520 (S.D.N.Y.) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept …, making proving actual damages in these cases extremely difficult if not impossible.'" (quoting S.Rep. No. 104–177, at 10 (1995))), *amended in part,* 328 F.Supp.2d 439 (2004); *Tiffany (NJ) Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y.2003) (same).

Section 1117(c), however, "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." *Gucci Am., Inc.,* 315 F.Supp.2d at 520 (internal citation and quotation marks omitted). Many courts have looked to an analogous provision in the Copyright Act for guidance, *see* 17 U.S.C. § 504(c), and have considered the following factors in setting statutory damage awards under the Lanham Act: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Malletier v. WhenU.Com, Inc.,* 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007) (quoting *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986)); *accord Ermenegildo Zenga Corp. v. 56th Street Menswear, Inc.,* 2008 WL 4449533, at *1, 5 (S.D.N.Y. Oct. 2, 2008); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.,* 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006); *Phillip [sic] Morris USA, Inc. v. Marlboro Express,* 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005).

#### 2. *Analysis*

■ In their moving papers, Philip Morris seeks damages of $2,000 per defendant. Pl. 9/26/08 Mem. at 6; Pl. 8/5/08 Mem. at 8. The defendants' violations of the trademark law are established by virtue of their failure to controvert the evidence of counterfeit sales alleged in the complaint. These facts alone would require an award of between $1,000 and $200,000 per counterfeit mark. 15 U.S.C. § 1117(c)(1). An award of up to $2,000,000 would be permitted if the Court found the violations to be willful. 15 U.S.C. § 1117(c)(2). Here, the defendants' failure to respond either to the complaint or to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the defendants' circumstances. Thus, the Court draws every reasonable inference on these points against the defendants.

Having considered the various factors, the Court has no difficulty finding that Philip Morris is justified in seeking statutory damages of $2,000 as to each defendant. The deterrent effect on other potential infringers and the defendants' lack of cooperation are sufficient by themselves to justify an award of this amount. Notably, courts have awarded significantly more than $2,000 in damages in other cases involving Philip Morris's same mark. *See Philip Morris USA v. M & S Mkt., Inc.,* 2006 U.S. Dist. LEXIS 83247, at *8–9 (E.D.Cal. Nov. 15, 2006), ($10,000.00 per mark), *adopted by* 2006 U.S. Dist. LEXIS 90086 (E.D.Cal., Dec. 12, 2006); *Philip Morris USA, Inc. v. Escandon,* 2005 U.S. Dist. LEXIS 26766, at *8–9 (E.D.Cal.2006) (same); *Phillip [sic] Morris USA Inc. v. Shalabi,* 352 F.Supp.2d 1067, 1076 (C.D.Cal.2004) (same).

In sum, taking into account the defendants' failure to submit to this Court any documentation from which to determine damages and the need for a damages award with deterrent effect, Philip Morris's request for $2,000 should be granted to compensate Philip Morris for the losses it suffered and to deter the defendants and others from infringing on the marks in the future.

### C. *Injunctive Relief*

■ Philip Morris requests injunctive relief that would prohibit the defendants from being involved in the trafficking of counterfeit Marlboro cigarettes. It also seeks to require the defendants to cooperate in good faith with Philip Morris in future counterfeit cigarette investigations. Pl. 9/26/08 Mem. at 10; Pl. 8/5/08 Mem. at 7.[3]

---

**3.** The specific relief requested by Philip Morris is an Order as to each defendant worded as follows:

[I]t is hereby ORDERED that [defendant], [defendant's] officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with [defendant] are hereby PERMANENTLY ENJOINED from:
(i) purchasing, selling, offering for sale, or otherwise using in commerce and counterfeit MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes;
(ii) assisting, aiding or abetting any other person or entity in purchasing, selling, offering for sale, or otherwise using in commerce any MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes.
(iii) interfering with or impeding in any way the inspections authorized by [the following paragraph] of this Order.
IT IS FURTHER ORDERED THAT Defendant cooperate in good faith with Philip Morris USA in future investigations of counterfeit cigarette sales at its retail establishments, including but not limited to (a) permitting representatives of an investigative firm under contract with Philip Morris USA to conduct inspections, without notice, of its inventory of cigarettes bearing the MARLBORO® and/or MARLBORO LIGHTS® trademarks in order to determine whether any of them are counterfeit

■ Courts have the authority to grant injunctive relief under the Lanham Act "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation" under Section 43(a) of the Lanham Act. 15 U.S.C. § 1116(a). In general, a plaintiff may obtain a permanent injunction if it shows (1) "actual success on the merits" and (2) "irreparable harm." *See, e.g., Prot. One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC.,* 553 F.Supp.2d 201, 205 (E.D.N.Y.2008) (citation omitted); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 290 (S.D.N.Y. 2003). Philip Morris has achieved "actual success on the merits" through the admission of liability arising from the defendants' default. *See Prot. One Alarm Monitoring, Inc.,* 553 F.Supp.2d at 205. As to irreparable harm, the complaint contains allegations demonstrating that there is a likelihood of confusion on the part of consumers. *See* Compl. ¶ 15. Case law establishes that "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." *Brennan's Inc. v. Brennan's Rest.,* 360 F.3d 125, 129 (2d Cir.2004). Accordingly, Philip Morris is entitled to a permanent injunction.

The injunction requested consists of terms that appear reasonably aimed at stopping counterfeiting in the future. Further, courts have imposed injunctive relief on similar terms in cases involving counterfeit Marlboro cigarettes. *See, e.g., Shalabi,* 352 F.Supp.2d at 1076; *Marlboro Express,* 2005 WL 2076921, at *7–8. Thus, the relief requested should be granted here as well.

### D. Costs

Philip Morris requests costs in the amount of $62.14 per defendant, reflecting filing fees and the cost of service. Pl. 9/26/08 Mem. at 11; Pl. 8/5/08 Mem. at 11. Under the trademark law, a court may in its discretion award costs and reasonable attorneys' fees. *See* 15 U.S.C. § 1117.[4] The costs of service and filing fees have been divided among each of the defaulting defendants. *See* Ryan Aff., ¶¶ 9, 14, 19, 24, 29, 34, 39, 44, 49; McCarthy Aff., ¶¶ 9, 14, 19, 24, 29, 34, 40, 45, 50, 55, 60, 65, 70, 75, 80, 85, 90, 95, 100, 105, 110, 115, 120. Thus, costs should be awarded in the amount of $62.14 per defendant.

### Conclusion

The motions for default judgment (Docket ## 76 and 85) should be granted. Philip Morris should be awarded a judgment against each defendant listed below in the amount of $2,062.14 per defendant:

— La Favorita Deli Grocery Corp., a corporation d/b/a La Favorita Deli Grocery;

— Uptown Deli & Grocery Corp., a New York corporation d/b/a Taiz Grocery;

— I & I Convenience Store Inc., a New York corporation d/b/a I & I Convenience Store;

(such inspections may proceed at any of Defendants' retail establishments between the hours of 9 a.m. and 5 p.m. on any day such Defendant is open for business) and to retain possession of any such cigarettes determined to be counterfeit; (b) responding to reasonable requests for information about its suppliers of MARLBORO® and/or

MARLBORO LIGHTS® cigarettes; and (c) cooperating with Philip Morris USA's representatives in their investigations of any suppliers of MARLBORO® and/or MARLBORO LIGHTS® cigarettes.

4. No request is made for attorney fees.

— TW Deli & Grocery Corp., a New York corporation d/b/a Jerome Deli Grocery;

— Leena Deli & Grocery Corp., a New York corporation d/b/a Leena Deli & Grocery;

— Menzal S. Azookari, individually and d/b/a Southern Blvd. Deli;

— Bronx # 1 Discount Grocery Corp., a New York corporation d/b/a N.Y. # 1 Discount Grocery;

— Adel Elsaidi, individually and d/b/a N.Y. Best Deli Grocery;

— RHS Grocery, Inc., a New York corporation d/b/a RHS Deli Grocery;

— University Deli & Grocery Corp., a New York corporation d/b/a University Deli;

— A & V Minimarket, Inc., a New York corporation d/b/a A & V Minimarket;

— Gold Mine Grocery, Inc., a New York corporation d/b/a Goldmine Grocery;

— Inkona News Stand, Inc., a New York Corporation d/b/a Ink On A;

— Mannys Mini Market, Inc., a New York corporation d/b/a Mannys Mini Market;

— Matthew Food Center Corp., a New York corporation d/b/a Matthew Deli Food Center;

— 315 Grocery Corp., a New York corporation d/b/a 315 Grocery and Candy;

— Antero Olivo and Secindino Olivo, individually and d/b/a Olivo Grocery;

— Haaji Deli Grocery Inc., a New York corporation d/b/a Paradise Deli Grocery;

— Unknown Business Entity, d/b/a S & P News;

— Majmud Salej, individually and d/b/a Salej Grocery;

— Sammy's II Deli Grocery Inc., a New York corporation d/b/a Sammy's II Deli Grocery Inc.;

— San Juan Food Market, Inc., a New York corporation d/b/a San Juan Food Market;

— Waddah Almarwri, individually and d/b/a W.A. Deli Grocery;

— Steven Deli Supermarket Corp., a New York corporation d/b/a Steven Deli Market;

— Vega's Deli Grocery Inc., a New York corporation d/b/a New Watson Food Market;

— Gamil Hassan, individually and d/b/a West Farm Deli Grocery;

— JJP Food Center Inc., a New York corporation d/b/a 1086 JJP Food Center Inc.;

— 394 Grocery Corp., a New York corporation d/b/a 394 Grocery;

— 676 Castle Hill Gomez Grocery Corp., a New York corporation d/b/a 676 Castle Hill Deli;

— K & G Deli Grocery, Inc, a New York corporation d/b/a K & G Deli; and

— 456 East W.A. Deli & Grocery Inc., a New York corporation d/b/a WA Grocery.

In addition, Philip Morris should also be granted injunctive relief against each of the above listed defendants in the following form:

It is hereby ORDERED that defendant, defendant's officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with defendant are hereby PERMANENTLY ENJOINED from:

(i) purchasing, selling, offering for sale, or other wise using in commerce and counterfeit MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes;

(ii) assisting, aiding or abetting any other person or entity in purchasing, selling, offering for sale, or otherwise using in commerce any MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes.

(iii) interfering with or impeding in any way the inspections authorized by the following paragraph of this Order.

IT IS FURTHER ORDERED THAT defendant cooperate in good faith with Philip Morris USA in future investigations of counterfeit cigarette sales at its retail establishments, including but not limited to (a) permitting representatives of an investigative firm under contract with Philip Morris USA to conduct inspections, without notice, of its inventory of cigarettes bearing the MARLBORO® and/or MARLBORO LIGHTS® trademarks in order to determine whether any of them are counterfeit (such inspections may proceed at any of Defendants' retail establishments between the hours of 9 a.m. and 5 p.m. on any day such Defendant is open for business) and to retain possession of any such cigarettes determined to be counterfeit; (b) responding to reasonable requests for information about its suppliers of MARLBORO® and/or MARLBORO LIGHTS® cigarettes; and (c) cooperating with Philip Morris USA's representatives in their investigations of any suppliers of MARLBORO® and/or MARLBORO LIGHTS® cigarettes.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections.

See also Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

DATED: December 15, 2008

New York, New York