11-3276-cv
*Guggenheim Capital, LLC v. Birnbaum*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued: April 12, 2013    Decided: July 15, 2013)

Docket No. 11-3276-cv

_____

GUGGENHEIM CAPITAL, LLC, GUGGENHEIM PARTNERS, LLC,

*Plaintiffs-Appellees*,

v.

DAVID BIRNBAUM, AKA DAVID B. GUGGENHEIM,

*Defendant-Appellant*,

CATARINA PIETRA TOUMEI, AKA LADY CATARINA PIETRA TOUMEI, AKA CATARINA FREDERICK, VLADIMIR ZURAVEL, AKA VLADIMIR GUGGENHEIM, AKA VLADIMIR Z. GUGGENHEIM, AKA VLADIMIR Z. GUGGENHEIM BANK, ELI PICHEL, THEODOR PARDO, JOHN DOES, 1-10, DABIR INTERNATIONAL, LTD.,

*Defendants.*[*]

_____

---

[*]    The Clerk of the Court is directed to conform the caption to the above.

Before:

KEARSE and CHIN, *Circuit Judges*, and
HALL, *District Judge*.[**]

_____

Appeal from a default judgment entered by the United States District Court for the Southern District of New York (Gardephe, *J.*) against defendant-appellant for his failure to comply with court orders.  We conclude that the district court did not abuse its discretion in entering the default judgment.

AFFIRMED.

_____

JOHN J. DABNEY (Rita Weeks, Kevin M. Bolan, *on the brief*), McDermott Will & Emery LLP, Washington, District of Columbia, and Boston, Massachusetts, *for Plaintiffs-Appellees*.

RONALD D. COLEMAN, Goetz Fitzpatrick LLP, New York, New York, *for Defendant-Appellant*.

_____

---

[**]    The Honorable Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

CHIN, *Circuit Judge*

Defendant-appellant David Birnbaum solicited investors to buy various financial products while presenting himself as "David B. Guggenheim." Plaintiffs-appellees are entities with rights or licenses to registered trademarks bearing the "Guggenheim" name. They filed suit alleging trademark infringement and other federal and state law claims. Birnbaum never answered the complaint, failed to comply with the district court's discovery orders, disrupted his own deposition, and violated -- on at least two occasions -- a preliminary injunction precluding use of the "Guggenheim" mark. Finally, upon plaintiffs' request, the district court entered a default judgment against Birnbaum. Birnbaum appeals. As we conclude that the district court was within its discretion to enter a default judgment pursuant to both Rule 37 and Rule 55 of the Federal Rules of Civil Procedure, we affirm.

## BACKGROUND

**A.   *The Facts***

**1.   *The Parties***

Plaintiff-appellee Guggenheim Partners, LLC ("Partners") provides global investment services and various financial products.  It and its predecessors-in-interest have provided similar services for the past fifty years.  With investment assets exceeding $110 billion, it is a well-known financial services entity.  Partners is a wholly-owned subsidiary of plaintiff-appellee Guggenheim Capital, LLC ("Capital" and, together with Partners, the "Guggenheim LLCs").

The Guggenheim LLCs are affiliated with the well-known Guggenheim family.  Capital owns (and licenses to Partners) the common law rights and the registered trademarks for various "Guggenheim" marks.  In light of the longstanding market presence of the Guggenheim LLCs, potential investors identify the registered "Guggenheim" marks with the financial services provided by the Guggenheim LLCs (and their predecessors-in-interest).

Birnbaum is a New York resident who, since the 1970s, has sought investors for investment opportunities by presenting himself as "David B. Guggenheim." He claims a relationship with the Guggenheim family on his mother's side, but provided no evidence to corroborate the relationship during the proceedings below.

## 2. *Initial Court Orders*

On November 22, 2010, the Guggenheim LLCs filed a complaint against Birnbaum alleging trademark infringement pursuant to 15 U.S.C. § 1114(1)(a), other federal trademark claims pursuant to 15 U.S.C. §§ 1114 and 1125, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1962(c), and various state law claims.[1] The district court (Marrero, *J.*) granted, *ex parte*, an order authorizing expedited discovery and temporarily restraining Birnbaum from "us[ing] the Guggenheim Capital, LLC and Guggenheim Partners, LLC names

---

[1] On January 11, 2011, the Guggenheim LLCs filed a First Amended Complaint to add Dabir International, Ltd. as a defendant. They then filed a Second Amended Complaint on January 14, 2011 to incorporate allegations about defendants' attempt to file a trademark under the "Guggenheim" name with the U.S. Patent and Trademark Office.

and trademarks in any way relevant to this matter." Order 2, Nov. 22, 2010, ECF No. 3. The Guggenheim LLCs had also requested a preliminary injunction; on December 17, 2010, after a hearing at which Birnbaum appeared but filed no opposition, the district court (Gardephe, *J.*) converted the temporary restraining order into a preliminary injunction.

3. *Violations of Discovery Orders*

After the complaint was filed, although Birnbaum appeared in the litigation, he did not respond to the expedited discovery requests. The district court gave Birnbaum an extension, but Birnbaum did not meet this first extension either. At a conference on January 13, 2011, the district court warned Birnbaum that he must comply with the court's discovery orders and also put this order in writing.

Despite Birnbaum's non-compliance, the district court granted him two more extensions to answer or amend his responses to the interrogatories and to produce the documents requested by the Guggenheim LLCs. Birnbaum, again, provided no substantive responses, responding to each request by invoking the Fifth Amendment privilege. On

-6-

February 1, 2011, the district court again warned Birnbaum about his behavior, by directing him to show cause as to "why contempt sanctions should not be imposed for his failure to respond to Plaintiffs' discovery requests as ordered by this Court." Order to Show Cause, Feb. 1, 2011, ECF No. 58. On February 7, 2011, Birnbaum responded, requesting a stay and asserting that, because he had justifiably invoked privilege, the court was precluded from imposing civil contempt sanctions.

On February 8, 2011, the Guggenheim LLCs tried to depose Birnbaum, but he refused to answer any questions. During a telephone conference that same day, the district court directed Birnbaum to participate in discovery in accordance with its instructions. Moreover, in an order issued two days later, the district court reiterated the warning, stating that "[a]ny further improper disruption of the deposition will not be tolerated, and sanctions will be imposed on the Defendant and his counsel in the event that the conduct that took place on February 8, 2011 is repeated." Order 2-3, Feb. 10, 2011, ECF No. 66.

## 4. *Violations of Preliminary Injunction*

Notwithstanding the issuance of the temporary restraining order and preliminary injunction, Birnbaum continued using the "Guggenheim" name and mark. In mid-December, Birnbaum met with a potential investor while posing as "David B. Guggenheim," chairman of "Guggenheim Bank." At a December 30, 2010 contempt hearing, the district court stated that its "patience is wearing thin here. It's wearing very thin." Default J. Against Defs. David Birnbaum & Dabir Int'l Ltd. 3, ECF No. 103 (internal quotation marks omitted). The district court then warned Birnbaum that if he continued to use the "Guggenheim" name, "the consequences [were] going to be very very severe." *Id.* (internal quotation marks omitted).

Weeks later, Birnbaum again solicited an investor while presenting himself as "David Guggenheim," this time in connection with an oil transaction. The district court issued another order to show cause as to "why contempt sanctions should not be imposed for [Birnbaum's] alleged

-8-

failure to comply with this Court's preliminary injunction order."[2]  Order to Show Cause, Mar. 7, 2011, ECF No. 85.

## B.   *Entry of Default Judgment*

On February 14, 2011, rather than filing an answer, Birnbaum moved to dismiss the complaint for failure to state a claim.  The district court granted the motion, in part, dismissing a cyberpiracy claim, but allowed most of the claims to proceed.  Birnbaum did not thereafter file an answer to the remaining claims, as the district court had directed.

At an April 4, 2011 show cause hearing, which addressed Birnbaum's violation of the preliminary injunction, the Guggenheim LLCs requested a default judgment due to his "willful contempt over and over and over and over again."  Hr'g Tr. 4:18-19, Apr. 4, 2011, ECF

---

[2]     Furthermore, the district court learned that a company had filed an application with the U.S. Patent and Trademark Office to register the "Guggenheim" name for an alleged vodka company.  The application, however, also described the alleged vodka company as a financial services entity.  Birnbaum asserted below that one of his co-defendants, on behalf of a corporate entity that shared Birnbaum's home address, had submitted the application without his knowledge.  The district court appears to have credited Birnbaum's response as the default judgment does not attribute this to Birnbaum personally.

No. 99-4.  The district court provided Birnbaum with an opportunity to respond, but Birnbaum, who was no longer represented by counsel, invoked his Fifth Amendment privilege.[3]  It then described Birnbaum's "overall obstruction of the discovery process" and observed that his conduct persisted "despite several orders I have issued, despite admonitions, despite warnings that it has to stop." *Id.* at 8:11-12, 8:16-17.

On April 14, 2011, the Guggenheim LLCs moved for a default judgment pursuant to Rule 55, as well as injunctive relief, statutory damages, and costs and attorneys' fees. Birnbaum filed no opposition.  Three months later, on July 15, 2011, the district court entered a default judgment against Birnbaum, permanently enjoined him from using the "Guggenheim" name or mark, awarded the Guggenheim LLCs statutory damages in the amount of $1.25 million pursuant to 15 U.S.C. § 1117(c), and ordered him to pay reasonable costs and attorneys' fees.

This appeal followed.

---

[3]    Birnbaum had requested pro bono counsel for the hearing, but the application was denied on the basis that Birnbaum had not established a meritorious defense.

## DISCUSSION

On appeal, Birnbaum contends that the district court abused its discretion by granting a default judgment in favor of the Guggenheim LLCs. For the reasons described below, we reject this argument. Before we reach the merits of his argument, however, we first address our jurisdiction to hear this claim.

## A. *Jurisdiction*

### 1. *Applicable Law*

"Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008). We have subject matter jurisdiction over appeals from the "final decisions" of U.S. district courts. 28 U.S.C. § 1291. Thus, we must "determine whether the district court intended the judgment to represent the final decision in the case." *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385 n.6 (1978).

Section 1291 does not "permit appeals, even from fully consummated decisions, where they are but steps

-11-

towards final judgment in which they will merge." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). A decision, however, is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 66 (2d Cir. 2011) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). We have also concluded that a decision is final when "the court clearly intends to close the case, *i.e.,* to enter a final judgment." *Ellender v. Schweiker*, 781 F.2d 314, 318 (2d Cir. 1986) (treating court's decision on collateral issues as final judgment though it did not reference order adjudicating all claims on merits); *cf. also Houbigant, Inc. v. IMG Fragrance Brands, LLC*, 627 F.3d 497, 498 (2d Cir. 2010) (per curiam) (no final judgment where a particular case was marked "closed" but district court continued resolving related and consolidated cases); *Vona v. Cnty. of Niagara*, 119 F.3d 201, 206 (2d Cir. 1997) (holding order was appealable judgment because case was marked "closed," indicating that district court intended order to be final judgment).

## 2. *Application*

The complaint alleged, in addition to federal and state trademark claims, a RICO violation and fraud. The district court's default judgment specifically identified that the action had been brought under the Lanham Act and RICO, but only ruled on the federal and state trademark claims.[4] Hence, although neither party briefed the issue, at first glance, it appears that two claims may have survived the district court's default judgment, raising a question as to the finality of that judgment.

At oral argument on appeal, both parties indicated that they understood the default judgment to be the final decision on the merits as to all of the claims raised by the Guggenheim LLCs. The district court, moreover, intended the same; after making certain ancillary rulings, it terminated all outstanding motions and ordered the case closed. *Cf. Ellender*, 781 F.2d at 317 (concluding that judgment was final appealable decision when clerk was informed that judgment closed the case). The docket

---

[4]    Separately, the district court had dismissed the cyberpiracy claim.

-13-

reflects no further involvement by the district court in this case.  *Cf. Houbigant, Inc.*, 627 F.3d at 498.

We further note that, in the nearly two years since the district court entered its default judgment, aside from defending the appeal, the Guggenheim LLCs have declined to further prosecute any claims (to the extent any remained outstanding).  Hence, they would suffer no prejudice by our treating the default judgment as final.  Mindful that we are directed to give a "practical rather than a technical construction" to section 1291, *Cohen*, 337 U.S. at 546, we conclude that the default judgment entered against Birnbaum dismissed the RICO and fraud claims against Birnbaum without prejudice.[5]  Hence, the judgment

---

[5]    The district court never made the requisite findings of "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity" needed to prove a civil RICO violation.  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quotation omitted) (requiring, in addition, injury to business or property resulting from RICO violation).  Nor did the default judgment address each of the elements of fraud under New York law:  (1) a false representation as to a material fact; (2) intent to deceive plaintiff; (3) justifiable reliance by plaintiff; and (4) pecuniary loss.  *See, e.g., Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007).

-14-

was a final decision, and we have subject matter jurisdiction over this appeal.

**B.    *Default Judgment Under Rule 37***

Turning to the merits, we conclude that, notwithstanding Birnbaum's arguments to the contrary, in light of Birnbaum's numerous discovery violations, the district court did not abuse its discretion by entering a default judgment pursuant to Rule 37.[6]

**1.    *Applicable Law***

"If a party . . . fails to obey an order to provide or permit discovery," the district court may impose sanctions, including "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A)(vi). Certain Rule 37 remedies -- dismissing a complaint or

---

[6]    The Guggenheim LLCs only moved for a default judgment pursuant to Rule 55.  Most of the orders disregarded by Birnbaum, however, were discovery orders, and the district court's default judgment decision applied a standard applicable in a Rule 37 context.  The Guggenheim LLCs' memorandum in support of their motion for default judgment also cited to the same Rule 37 case as the default judgment decision. *See Am. Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999).  Moreover, both parties, at oral argument, discussed the default judgment, in part, as a discovery sanction.  Hence, we address the district court's entry of default judgment under Rule 37, in addition to Rule 55.

entering judgment against a defendant -- are severe sanctions, but they may be appropriate in "extreme situations," as "when a court finds willfulness, bad faith, or any fault on the part of the" noncompliant party. *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990) (internal citation and quotation marks omitted).

We generally review an entry of a default judgment for abuse of discretion. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam) ("The question, of course, is not whether . . . the Court of Appeals[] would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing."); *see also S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010). When assessing a district court's exercise of its discretion pursuant to Rule 37, we generally look to "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the . . . noncompliance; and (4) whether the non-compliant party had been warned" that noncompliance would be sanctioned. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d

Cir. 2009) (per curiam) (quotation omitted); *see also Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-53 (2d Cir. 1995).

### 2. *Application*

#### a. *Entry of Default Judgment*

The district court found that Birnbaum's intransigence spanned months, and that less serious sanctions would have been futile. Birnbaum raises no legitimate challenge to these findings, and we find no error in these conclusions or findings of fact, particularly in light of his failure to answer the complaint or oppose the motion for default judgment. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[A] default is an admission of all well-pleaded allegations against the defaulting party."). Hence, we focus on the willfulness of Birnbaum's default and the sufficiency of the warnings he received.

#### i. *Willfulness*

The district court found that Birnbaum had willfully disobeyed its discovery orders. It made this finding after recounting numerous extensions provided to

permit Birnbaum's participation throughout the discovery process. It further noted that Birnbaum had not complied with written and oral discovery-related court orders, before it found that Birnbaum had "a demonstrated history of willful non-compliance with court orders." Default J. 9, ECF No.103; *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (noting "district courts possess 'wide discretion' in imposing sanctions under Rule 37" but declining to enter default judgment without explanation supporting the sanction). *But see Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (failure to comply may be excused if defendant made "good faith efforts to comply" or if compliance was "thwarted by circumstances beyond his control"). Given Birnbaum's sustained recalcitrance, this finding was not clearly erroneous.

### ii. *Warnings for Non-Compliance*

Birnbaum contends that he was not sufficiently warned of the consequences of a default judgment. He argues that a more thorough warning was necessary as he appeared without counsel during the April 4, 2011 hearing

-18-

when the default judgment was discussed.  In light of the record as a whole, this argument is without merit.

Our Rule 37 precedents hold that a court abuses its discretion if it dismisses a case without first warning a *pro se* party of the consequences of failing to comply with the court's discovery orders.  *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 48, 50 (2d Cir. 1994) (per curiam).  We have no analogous precedent in the default judgment context, but even entries of default judgments against counseled clients require sufficient notice.  *See Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 270 (2d Cir. 1999) ("Due process requires that courts provide notice and an opportunity to be heard before imposing *any* kind of sanctions." (alteration, citation, and internal quotation marks omitted)).  *See generally Sieck v. Russo*, 869 F.2d 131, 133, 134 (2d Cir. 1989) (affirming entry of a default judgment against defendants who were warned that "a default judgment *will* be entered against them" if they failed to appear (internal quotation marks omitted)).  Both dismissal and entry of default judgment, however, are serious, case-terminating, Rule 37 sanctions; hence, a

court is similarly obliged to provide adequate notice of a default judgment as a sanction against a party proceeding *pro se*.[7]

In light of this obligation, we must assess whether the district court's warnings -- which mentioned sanctions, but never the phrase "default judgment" -- were sufficient. By comparison, in *Valentine v. Museum of Modern Art*, we concluded that a district court had sufficiently warned the *pro se* defendant where the court read and explained relevant portions of Rule 37 on the record before ultimately dismissing the case. 29 F.3d at 48. Here, the district court's warnings were not so specific, but it warned Birnbaum regularly and often; throughout the case, Birnbaum received six separate warnings. First, at a January 13, 2011 conference, the district court verbally warned Birnbaum that he had to participate in discovery as ordered, then issued a written order outlining Birnbaum's discovery obligations. Second,

---

[7]    We have previously acknowledged this principle in non-precedential decisions. *See, e.g.*, *Robertson v. Dowbenko*, 443 F. App'x 659, 660-61 (2d Cir. 2011) (summary order); *SEC v. Setteducate*, 419 F. App'x 23, 24-25 (2d Cir. 2011) (summary order).

in a February 1, 2011 order to show cause, the district court directed Birnbaum to explain "why contempt sanctions should not be imposed for his failure to respond to Plaintiffs' discovery requests as ordered by this Court." Order to Show Cause, ECF No. 58. Third, in a February 8, 2011 telephone call, the district court orally chastised Birnbaum for practices relating to his deposition. Fourth, by its February 10, 2011 order, the district court emphasized that sanctions would be imposed for "[a]ny further improper disruption of the deposition." Order 2-3, ECF No. 66. Fifth, the Guggenheim LLCs requested their default judgment in open court, with Birnbaum present. Sixth, after describing Birnbaum's numerous efforts to delay the proceedings, the district court stated that "we have reached the point in the proceedings where I need to take action." Hr'g Tr. 8:19-20. And finally, Birnbaum was served with a copy of the Guggenheim LLCs' order to show cause for default judgment, and a proposed default judgment was filed on the docket.[8] Birnbaum did not oppose the default judgment.

---

[8] Moreover, we note that in non-discovery contexts, the

-21-

Viewed as a whole, Birnbaum cannot credibly argue that he was not sufficiently warned that serious sanctions were imminent. *See S. New Eng. Tel. Co.*, 624 F.3d at 144 ("The district court is free to consider 'the full record in the case in order to select the appropriate [Rule 37] sanction.'" (citation omitted)). This conclusion is reinforced by the fact that Birnbaum was not a *pro se* litigant in the traditional sense. While unrepresented during the final April 4 hearing, he was counseled for most of the proceedings below and also had an attorney in the parallel criminal case at the time he received the district court's final warning. We therefore conclude that the numerous warnings Birnbaum received -- both while represented by counsel and not -- were, collectively, sufficient to place him on notice of the pending default judgment. And, we similarly conclude that the district

---

district court (1) warned Birnbaum that if he continued to use the "Guggenheim" name, "the consequences [were] going to be very very severe," Hr'g Tr. 3:19, ECF No. 99-4, and, (2) by a March 7, 2011 order to show cause, directed him to respond as to "why contempt sanctions should not be imposed for his alleged failure to comply with this Court's preliminary injunction order," Order to Show Cause, ECF No. 85.

court's decision to enter a default judgment against Birnbaum was not an abuse of its discretion.

**b.    *Further Allegations of Abuse of Discretion***

Birnbaum further contends that the district court abused its discretion by (1) denying him civil counsel for the April 4, 2011 hearing, (2) sanctioning him for invoking the Fifth Amendment privilege, and (3) denying a stay of the civil case pending resolution of a related criminal charge of wire fraud.  None of these arguments undermines our conclusion that the district court's entry of default judgment was no abuse of discretion.

First, it is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases.  *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986); *In re Di Bella*, 518 F.2d 955, 958-59 (2d Cir. 1975) (witness threatened with jail time entitled to counsel in civil contempt proceeding).  Thus, although, as described above, he *was* represented for most of the proceedings, Birnbaum was not *entitled* to counsel in this civil case.

Second, the district court never prohibited Birnbaum from invoking the Fifth Amendment. Rather, it merely indicated that, when asserting this right, Birnbaum had to cite supporting case law to justify invoking the privilege. As the Fifth Amendment privilege is not absolute, Birnbaum would still be obliged to provide, *inter alia*, exculpatory responses or non-incriminating responsive documents. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 409-11 (1976) (Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications"); *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (privilege applies in civil proceedings only to disclosures reasonably believed to be used against defendant in a criminal case). Given Birnbaum's history of ignoring district court directives, unilateral failure to cooperate at depositions, and failure to provide the requested discovery, the district court's instruction was not an abuse of discretion.

Third, the district court was well within its discretion to deny a stay. Although the Constitution, in certain cases, may require that civil proceedings be stayed

pending the resolution of a parallel criminal case, "a plausible constitutional argument would be presented only if, at a minimum, denying a stay would cause substantial prejudice to the defendant." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 (2d Cir. 2012) (citation and internal quotation marks omitted). Granted, two factors favored granting a stay: (1) any testimony offered by Birnbaum during the civil suit could have undermined an attempt to invoke the Fifth Amendment privilege in the criminal case, and (2) the criminal prosecution would have similarly protected the interests of consumers and the Guggenheim LLCs. *See id.* at 101.

Other factors, however, favored denying the stay. Although a criminal complaint had been filed in the case, Birnbaum was never indicted.[9] *See id.* at 101. In addition, he had repeatedly failed to comply with the district court's discovery orders (not to mention the preliminary injunction) by the time the criminal complaint was filed. *See id.* at 102 ("plainly dilatory tactics" preceding

_____

[9] The criminal complaint against Birnbaum for wire fraud was filed on January 26, 2011; it was dismissed on September 9, 2011.

criminal indictment weighed against granting stay).
Moreover, the Guggenheim LLCs had a strong interest in
resolving the civil case -- to prevent additional investors
from being duped by "David B. Guggenheim" or "David
Guggenheim" and to limit the negative impact on their
brand. *See id.* at 103-04. Finally, the court was entitled
to manage its docket. *See id.* at 104.

Birnbaum had no absolute right to "a stay of civil
proceedings pending the outcome of criminal proceedings,"
*Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986)
(quotation omitted), and he has not met the "heavy" burden
of demonstrating an abuse of discretion, *see Louis Vuitton
Malletier S.A.*, 676 F.3d at 100. "A party who flouts
[discovery] orders does so at his peril." *Update Art, Inc.
v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).
And, as the district court made findings that satisfied the
four *Agiwal* factors, viewing the record as a whole, we
conclude that it did not abuse its discretion by entering a
default judgment against Birnbaum as a discovery sanction
under Rule 37.

## C. *Default Judgment Under Rule 55*

Even if we were to assume that default judgment under Rule 37 was, for some reason, improper, we conclude that the entry of the default judgment under Rule 55 was certainly supported by the record.

### 1. *Applicable Law*

Under Rule 55, a party defaults when he "has failed to plead or otherwise defend" the case at hand. Fed. R. Civ. P. 55(a). "We have embraced a broad understanding of the phrase 'otherwise defend.'" *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (defendant failed to "otherwise defend" by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial"); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917-19 (3d Cir. 1992) (affirming Rule 55 default judgment against defendants who filed answer and actively litigated pretrial discovery but did not comply with discovery orders or appear for trial), *cited with favor in Mickalis Pawn Shop*,

645 F.3d at 130.  A party may apply to the district court for entry of a default judgment against a party that has defaulted.  Fed. R. Civ. P. 55(b)(2) (further requiring written notice to opposing party who has appeared in case).

As under Rule 37, we review the district court's grant of a default judgment under Rule 55 for abuse of discretion.  *See, e.g., Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994).  A party challenging the entry of a default judgment must satisfy the "good cause shown" standard in Rule 55(c).  *See id.; see also* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).").  This standard requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.  *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983); *cf. New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (applying Rule 55(c) standard when reviewing decision on motion for reconsideration).

## 2. *Application*

We conclude that because the default was willful and Birnbaum presented no meritorious defense, entry of default judgment under Rule 55 did not constitute an abuse of discretion.

### a. *Willfulness of Default*

Birnbaum does not deny that he received the complaint, the court's orders, or the notice of default judgment, or that he never answered the complaint. Likewise, he does not contend that his non-compliance was due to circumstances beyond his control. These and other circumstances support an inference of willful default. *See Commercial Bank of Kuwait*, 15 F.3d at 243 (agreeing that "inference of willful default [was] justified" where defendants received actual notice of complaint and were not prevented by outside factors from timely answering (internal quotation marks omitted)).

We concluded above that the district court did not clearly err in finding that Birnbaum had willfully violated its discovery orders. Support for a finding of willful default is equally strong under Rule 55, where the willful

-29-

violations of the district court's discovery orders may be construed as a failure to defend. *See Mickalis Pawn Shop*, 645 F.3d at 130. Furthermore, Birnbaum's two separate attempts to solicit investors while presenting himself as "David B. Guggenheim," in violation of the district court's preliminary injunction, reflect a general disregard for the orders of the district court and provide context for the willfulness of his discovery violations. We therefore conclude that the district court was presented with a plethora of evidence to support its finding that Birnbaum willfully defaulted.

### b. *Meritorious Defense*

Birnbaum contends that his use of the name "Guggenheim" constitutes fair use of his rightful name. Because his conduct plainly fails to satisfy the elements of a legitimate fair use defense, even if the district court erred by not specifically addressing this defense, we conclude that his asserted defense fails.

The Federal Rules of Civil Procedure provide that, in a responsive pleading, a party must "state in short and plain terms its defenses to each claim asserted against it."

Fed. R. Civ. P. 8(b)(1)(A). Moreover, the party must "admit or deny the allegations asserted against it by an opposing party." *Id.* 8(b)(1)(B). When a responsive pleading is required, a failure to deny allegations will result in those allegations (except to the extent they relate to damages) being deemed admitted. *Id.* 8(b)(6); *see also, e.g.*, *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Au Bon Pain Corp.*, 653 F.2d at 65.

To the extent a complaint alleges trademark infringement, a defendant may rebut the claim by asserting various statutory defenses. *See* 15 U.S.C. § 1115(b). When an alleged infringer asserts the fair use defense, he asserts, in relevant part, that

> the use of the name . . . charged to be an
> infringement is a use, otherwise than as a mark,
> of the party's individual name in his own
> business, . . . which is descriptive of and used
> fairly and in good faith only to describe the
> goods or services of such party.

*Id.* § 1115(b)(4). "[R]esolution of a fair-use defense requires the court to focus on the defendant's (actual or proposed) use." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 403 (2d Cir. 2009). In so doing, a court reviews whether a

particular use was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc. ("EMI")*, 228 F.3d 56, 64 (2d Cir. 2000); *see also 815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988) (noting that surnames, for trademark analysis purposes, are treated as descriptive terms).

Even if we assumed that the district court erred by not explicitly assessing the merits of Birnbaum's fair use defense, any such error would be harmless. As part of the conjunctive test to assess fair use, a reviewing court must determine whether, in part, a challenged use was "in good faith." *EMI*, 228 F.3d at 64. The district court, after examining documentary evidence of Birnbaum's attempt to solicit investors, concluded that he had employed counterfeit marks similar to Plaintiffs' famous "Guggenheim" marks. It further concluded that Birnbaum acted in bad faith by deciding "to offer and sell services that are identical or nearly identical to those offered under Plaintiffs' famous Guggenheim Marks," thereby intending to confuse the public. Default J. ¶ 50.

-32-

Finally, the district court held that Birnbaum's use of the marks was "a bad faith attempt to trade off of the goodwill and reputation of Plaintiffs' famous marks." *Id.* ¶ 51. These findings are not clearly erroneous.

Birnbaum seems to suggest that his use of the "Guggenheim" name, which predated the registration of the earliest of the "Guggenheim" marks in 2006, undermines the district court's finding of bad faith. We do recognize "that one's surname given at birth creates associations attached to that name which identify the individual." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 131 (2d Cir. 2004); *see also Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 734 (2d Cir. 1978) (recognizing that courts historically deferred to individual use of own name in trade). We nevertheless acknowledge "the unfairness of letting one person trade on the reputation or the name of another." *Brennan's, Inc.*, 360 F.3d at 131.

"Guggenheim," however, is *not* Birnbaum's surname. Birnbaum presented no evidence below supporting his assertion that he was, indeed, related to the Guggenheim

family, and the district court found that "David B. Guggenheim" and "David Guggenheim" were both aliases. Birnbaum's bald assertions to the contrary are not sufficient to render those findings clearly erroneous. *Cf. Shechter v. Comptroller of the City of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996) ("[D]efenses which amount to nothing more than mere conclusions of law . . . have no efficacy." (quotation omitted)). As we have concluded in the past, "it would end all protection to trade names, if all one had to do in order to pirate them, was to change one's own name to that of one's intended victim, or to one near enough to his to be no more than a deceptive variant." *Societe Vinicole de Champagne v. Mumm*, 143 F.2d 240, 241 (2d Cir. 1944) (per curiam). And, as Birnbaum has "abandon[ed] his family name, and [chosen] another for his convenience, it is reasonable to charge him with whatever prejudice to others that may cause; certainly when, as here, he knows what that prejudice will be." *Id.* Hence, we conclude that his defense of fair use was destined to fail because the district court found that Birnbaum had not used the mark in good faith. *See EMI*, 228 F.3d at 66; *see also TCPIP*

*Holding Co. v. Haar Commc'ns Inc.*, 244 F.3d 88, 103-04 (2d Cir. 2001) (viewing *EMI* factors as conjunctive and declining to consider whether finding of bad faith would have also precluded fair use due to Court's holding that defendant's use of name was "as a mark").

\* \* \*

We recognize that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *Nat'l Hockey League*, 427 U.S. at 643 (noting both penalization and general deterrence rationales for severe sanctions). In this "appropriate" case, the district court did not abuse its discretion by entering a default judgment against Birnbaum.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.