*JTH Tax LLC v. Kukla*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of February, two thousand twenty-four.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

JTH TAX LLC, d.b.a. LIBERTY TAX SERVICE, f.k.a. JTH TAX, INC.,

> *Plaintiff-Appellee,*

v.                                                                 No. 23-66

EDWARD KUKLA, KARLY JEANTY, HARLINE JEANTY, EXPERT TAX CONSULTANTS, LLC,

> *Defendants-Appellants.**

_____

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Defendants-Appellants:**     AVRAM TURKEL (Marshall Bellovin, *on the brief*), Ballon Stoll P.C., New York, NY.

**For Plaintiff-Appellee:**     JAMES L. MESSENGER, Gordon Rees Scully Mansukhani, LLP, Boston, MA (Brian J. Wall, Gordon Rees Scully Mansukhani, LLP, Boston, MA; Peter G. Siachos, Gordon Rees Scully Mansukhani, LLP, New York, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 15, 2022 judgment of the district court is **AFFIRMED** and the portion of the appeal that challenges the December 15, 2022 contempt order is **DISMISSED** for lack of appellate jurisdiction.

Edward Kukla, Karly Jeanty, Harline Jeanty, and their affiliated tax business, Expert Tax Consultants, LLC (collectively, "Defendants"), appeal a default judgment, permanent injunction, and contempt order entered against them after they failed to respond to a civil complaint filed by Liberty Tax Service ("Liberty"), the name under which plaintiff-appellee JTH Tax operates. We assume the parties' familiarity with the underlying facts, procedural history, and issues, to which we refer only as necessary to resolve this appeal.

2

This dispute flows from a 2017 franchise agreement (the "Agreement") that authorized Kukla and Karly to run a Liberty tax preparation franchise. As relevant here, the Agreement barred Kukla and Karly from operating a competing business for the five-year term – plus another two years thereafter – and required Kukla and Karly to return all of Liberty's confidential information upon its expiration or termination. After discovering that Kukla was operating a competing business, Liberty terminated the Agreement on February 22, 2022 and filed suit against Defendants on March 21, 2022, alleging that Defendants had, as relevant here, breached the Agreement's noncompete and confidential information provisions, misappropriated trade secrets, and committed tortious interference.

Although Defendants were properly served with the complaint, they did little to defend themselves from the lawsuit. To begin, they never filed an answer or motion in lieu of an answer pursuant to Federal Rule of Civil Procedure 12. When the district court held a conference shortly after the complaint was filed, Defendants' counsel attended the proceeding but declined to enter an appearance or substantively participate. And after Liberty moved for a preliminary injunction, Defendants filed no opposition, and their counsel again attended the

district court's hearing without entering an appearance. Defendants also failed to appear even after the district court entered their default. Nor did Defendants file an objection when the assigned magistrate judge recommended entry of the preliminary injunction. Finally, after the district court adopted the magistrate judge's unobjected-to recommendation and granted the preliminary injunction barring Defendants from continuing to operate their competing business in violation of the Agreement, Defendants flouted that order and continued to operate the competing business.

Liberty moved for the entry of a default judgment based on Defendants' failure to answer the complaint and an order of contempt based on Defendants' refusal to abide by the terms of the preliminary injunction. It was only then that Defendants' counsel filed a notice of appearance and moved to vacate the default. But at the evidentiary hearing that followed, Defendants introduced no evidence and cross-examined no witnesses. The district court thus granted both of Liberty's motions and denied Defendants' vacatur motion, entering default judgment against Defendants (along with a permanent injunction) and issuing a contempt order that same day. Among other things, the contempt order contemplated that Defendants would eventually disgorge any profits they derived

4

during the period in which they operated in violation of the preliminary injunction, and it authorized Liberty to serve post-judgment discovery on Defendants to ascertain the extent of those profits.

Defendants now appeal the district court's judgment and its separately issued contempt order, arguing that the district court abused its discretion in entering default judgment, granting a permanent injunction, denying Defendants' motion to vacate the default, and holding Defendants in contempt.

## I.     We Lack Jurisdiction to Review the Contempt Order.

"Our appellate jurisdiction is limited to final decisions." *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 410 (2d Cir. 1997) (citing 28 U.S.C. § 1291). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" and attend to other "collateral" matters that "will not alter" the merits. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199–200 (1988) (internal quotation marks omitted) (holding that a pending motion for attorney's fees is collateral); *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 124 n.3 (2d Cir. 2011) (same for sanctions motion).   In other words, once the district court enters such a final decision on the merits, we may review it even if those other matters are still pending.

We may not, however, review those other "collateral" questions until they

5

themselves have been finally resolved. For instance, even if the district court has fully adjudicated the merits of a dispute (and issued a final judgment to that effect), we cannot review a pending contempt decision until the district court has finally adjudicated the contempt proceedings. *See Forschner Grp.*, 124 F.3d at 410. To be final, those proceedings must not only find a party in contempt but must also fix the "sanctions" therefor, such as by calculating the monetary penalty or damages the party in contempt must pay. *See id.*

Here, the district court entered a final decision on the merits of the dispute when it issued the default judgment and permanent injunction on December 15, 2022. As is required for finality, that decision "end[ed] litigation on the merits" and left "nothing for the court to do" except attend to collateral issues – like attorney fees and contempt proceedings – that "w[ould] not alter" the final merits decision. *Budinich*, 486 U.S. at 199 (attorney's fees); *see also Forschner Grp.*, 124 F.3d at 406 (exercising jurisdiction over merits even though contempt order was pending). We therefore have jurisdiction to review the district court's judgment of default and entry of a permanent injunction against Defendants.

The same cannot be said for the contempt order, which is clearly not final. In the order itself, the district court stated that it would calculate the sanctions

against Defendants at a later date, once Defendants provided an accounting of the profits they earned while violating the district court's injunction (and after Liberty served post-judgment discovery). None of those things has occurred. As a result, "[t]he language [of the contempt order] clearly contemplates an assessment of damages" that is "yet to be determined," which precludes that order from being final. *Forschner Grp.*, 124 F.3d at 410. Accordingly, we lack jurisdiction to review the contempt order and will dismiss so much of the appeal as seeks relief from it.

## II. The District Court Did Not Abuse Its Discretion in Granting Default Judgment.

Under Federal Rule of Civil Procedure 55, "a party defaults when he 'has failed to plead or otherwise defend' the case at hand." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013) (quoting Fed. R. Civ. P. 55(a)). "We review the district court's entry of a default judgment for an abuse of discretion." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1307 (2d Cir. 1991). In assessing whether a district court properly granted a default judgment, we look to three factors: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Cap.*, 722 F.3d at 455.

Here, the district court did not err in finding that Defendants' default was

willful. *See* App'x at 1253–54. "[W]here [a] defendant does not deny that he received the complaint, the court's order, or the notice of the default judgment and does not contend that his non-compliance was due to circumstances beyond his control, an inference of willful default is justified." *Bricklayers & Allied Craftworkers Loc. 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (internal quotation marks omitted). Despite nine months of district court proceedings, Defendants never responded to Liberty's complaint. *See* Dist. Ct. Doc. Nos. 1, 74; App'x at 1222–23. They do not dispute that they were served with the complaint and offer no explanation for their failure to respond. At best, Defendants cite one case from this Court in which we found that a litigant's inadvertent failure to respond to a complaint – which went unnoticed for a few months – was not willful. *See* Defs. Br. at 7 (citing *Am. Alliance Ins. Co., v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). But that case bears little resemblance to Defendants' conduct here, which exhibited "a clear pattern of willful and deliberate disregard for the litigation." *Bricklayers*, 779 F.3d at 187.

Nor have Defendants raised any meritorious defenses. To do so, they must "present some evidence beyond conclusory denials." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). In their briefs, Defendants argue that they

8

did not breach a 2014 franchise agreement that they had earlier entered into with Liberty because the noncompete covenant expired in 2021. But that argument is hardly a defense to Liberty's claims, since Liberty is suing Defendants for breaching the noncompete clause in the *separate* 2017 franchise agreement – the Agreement – containing obligations effective through January 2024.[1] Equally futile is Defendants' argument that Harline cannot be liable because she never executed a noncompete with Liberty. As is obvious from the face of the complaint, Liberty is not suing Harline for breaching the noncompete clause in the Agreement; it is suing her for tortiously interfering with the noncompetes Liberty *did* execute with the other Defendants – a cause of action that does not require privity between Harline and Liberty. *See* App'x at 310 (reciting the elements of tortious interference under applicable state law).

Defendants also assert that Karly's noncompete expired in 2019, when he signed an "assignment" removing him as a franchisee. But that argument too is meritless because, as the district court noted, the assignment provided that Karly

---

[1] In their reply, Defendants also argue that the noncompete in the 2014 franchise agreement was unenforceable as violative of public policy. But even if the 2014 agreement were somehow relevant, Defendants forfeited any arguments about unenforceability by failing to adequately raise such arguments in their opening brief. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

"remain[ed] bound by the post-termination [noncompete] covenants" in the Agreement. *Id.* at 298.

As for Defendants' insistence that Kukla and Karly did not violate the noncompete because they were not performing tax services at the relevant times, that is nothing more than a "conclusory denial[]" that falls well short of a meritorious defense. *Enron Oil Corp.*, 10 F.3d at 98. Moreover, even if it were true that Kukla and Karly had stopped performing tax services, that would not excuse their other breaches, such as their failure to return Liberty's confidential information or their trade-secret violations, which were themselves proper predicates for the default judgment.

Finally, as to the third default judgment factor – whether Liberty would be prejudiced by vacatur – we need not even reach it. Especially in light of Defendants' refusal to participate in the proceedings below, we conclude that Defendants' "willful default and the absence of meritorious defenses [are] sufficient to support the district court's disposition of the case." *Com. Bank of Kuwait v. Cent. Bank of Iraq*, 15 F.3d 238, 244 (2d Cir. 1994).

### III. The District Court Did Not Abuse Its Discretion in Granting a Permanent Injunction.

We review a district court's decision to grant a permanent injunction for

abuse of discretion. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999).

To obtain such relief, a movant must show "irreparable injury and the inadequacy

of legal remedies." *Id.* On appeal, Defendants contest neither of those elements

and argue only that the permanent injunction was "unduly harsh" because it

enjoined them from operating a competing business with Liberty. Defs. Br. at 12;

Reply at 13. We disagree. Though a district court may overstep its discretion in

issuing a permanent injunction that is "too broad" and not "narrowly tailored,"

*Starter Corp. v. Converse Inc.*, 170 F.3d 286, 299 (2d Cir. 1999), the district court did

no such thing here. Indeed, we have recognized that a district court may enforce

the terms of a noncompete agreement through a permanent injunction when that

injunction is "reasonable" in "time" and "geograph[y]" and is "necessary to

protect" a "legitimate business interest[]." *Ticor Title*, 173 F.3d at 69, 73; *see also*

*JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 825–26 (E.D. Va. 2007) (applying Virginia

law – which governs the Agreement – in granting Liberty a permanent injunction

enforcing a materially identical noncompete covenant). The permanent

injunction here does just that: it restrains Kukla, Karly, and Expert Tax

Consultants, LLC from operating a competing business within twenty-five miles

of their franchise location for two years from the date of the district court's order,

on the exact same terms as Kukla and Karly's original agreements with Liberty. We see nothing unduly harsh in those terms, especially since they are limited in time and scope.

*     *     *

We have considered Defendants' remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court as to the entry of default judgment and a permanent injunction against Defendants and **DISMISS** for lack of appellate jurisdiction that portion of the appeal that seeks relief from the district court's contempt order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12