ACTION S.A. and Deltamar
Establishment, Plaintiffs–
Appellees,

v.

MARC RICH & CO., INC. and
Marc Rich, Defendants,

Marc Rich, Defendant–Appellant.

No. 228, Docket 91–7528.

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 1991.

Decided Dec. 11, 1991.

Daniel J. Beller, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Doreen Le Pichon, Gidon M. Caine, Jill M. Wheaton, of counsel), for plaintiffs-appellees.

Andrew L. Deutsch, New York City (Milgrim Thomajan & Lee P.C., Carol M. Fischer, Robert A. Meister, of counsel), for defendant-appellant.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

Marc Rich appeals from a default judgment in the District Court for the Southern District of New York, Griesa, *Judge*, for $6,306,714.51, consisting of $1,696,460.26 in compensatory damages, $4,110,254.25 in interest, and $500,000.00 in punitive damages. Rich presents three arguments in support of reversal: first, that the district court lacked subject matter jurisdiction; alternatively, that the default should be set aside to allow him to litigate on the merits; finally, that the damages must be recalculated. We find Rich's first two arguments to be without merit. We affirm the award of compensatory damages, and remand for recalculation of interest and punitive damages.

*Procedural History*

On January 17, 1983, Action S.A. and Deltamar Establishment, both foreign corporations, filed suit in the District Court for the Southern District of New York against Marc Rich & Co., Inc., a company operated by Marc Rich. On August 29, 1983, plaintiffs served an amended complaint on Rich, joining him in the action. The complaint alleged fraud, breach of fiduciary duty, breach of contract and unjust enrichment arising from a contract for the sale of rice. Federal jurisdiction was based on diversity of citizenship.

Rich failed to answer the complaint, and on January 22, 1985, plaintiffs moved for a default judgment against him. Rich made a limited appearance on January 28, 1985, claiming that the court lacked subject matter jurisdiction. Rich, who had been naturalized as a Spanish citizen in 1982, alleged that he had relinquished his United States citizenship, and thus complete diversity between the parties was lacking. On January 19, 1988, following an evidentiary hearing, Judge Griesa found that Rich had not relinquished his American citizenship in 1982 and that he was a United States citizen at the time this action commenced. The court granted plaintiffs' motion for

entry of a default judgment, and denied Rich's subsequent motion to set aside that default. After an inquest on damages, held between January 1990 and January 1991, the court entered judgment for the plaintiffs on April 24, 1991, for $6,306,-714.51.

## I. *SUBJECT MATTER JURISDICTION*

### A. *Rich's Citizenship*

■ In April 1982 a federal grand jury began investigating the activities of Rich and Marc Rich & Co., A.G. ("AG"). On August 16, 1982, Rich became naturalized as a Spanish citizen, appearing before a judge in Madrid and swearing an "oath and fidelity to the King and to obey Spanish Law which oath is given in the legal form and ... renounc[ing] his USA citizenship." Rich thereby obtained Spanish citizenship, a Spanish national identity card, and a Spanish passport.

Despite his naturalization as a Spanish citizen, Rich continued to behave in a manner consistent with American citizenship. On March 25, 1983, the United States Consul in Madrid informed Rich that he might have lost his United States citizenship by swearing allegiance to Spain. The Consul requested that Rich respond within 30 days to clarify his intent. Rich did not respond until November 23, 1984, fifteen months after this action commenced.

In early 1983, when AG failed to comply with a subpoena to produce documents issued by the federal grand jury, Rich feared that, as an American citizen and chairman of the board of the company, he might be held in contempt for the company's actions. Consequently, in May 1983, Rich and his partner brought action in a Swiss court to compel production of the documents, arguing that "[t]he plaintiffs as private individuals with American citizenship are subject to American jurisdiction," and therefore risked sanctions for AG's failure to produce the documents.

Rich continued to use his American passport despite renunciation of American citizenship. Although he never produced the passport during discovery, a notable omission given the vast amount of evidence produced throughout this case, witnesses testified that they had seen him travelling in the United States during 1982 and 1983. His Spanish passport indicated no such travel during that time.

Rich also continued to list himself in the Commercial Register of the Swiss Canton of Zug as an American citizen living in Samosaguas, Madrid. Rich's stated citizenship in the register remained unchanged throughout 1982 and early 1983, despite a number of corrections made to other parts of Rich's entry during the years in question. Rich did not change his listing to indicate Spanish citizenship until May 13, 1985, after this action commenced.

### B. *Expatriation*

At the time the complaint was filed in 1983, the relevant federal expatriation statute provided that:

"A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts ... (1) obtaining naturalization in a foreign state upon his own application ... (2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state ... (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state ..."

8 U.S.C. § 1481(a) (1982) (amended 1986). Under the statute, loss of American citizenship required a voluntary performance of an expatriating act. The Supreme Court, in *Vance v. Terrazas*, 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980), added an additional element, namely a specific intent to relinquish United States citizenship. *See also Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). Rich committed a voluntary act of expatriation by taking an oath of allegiance to Spain and renouncing his American citizenship. We must now determine whether the district court was correct in finding that Rich did not have the necessary intent to expatriate himself.

Rich contends that his acts of expatriation conclusively establish intent to relinquish United States citizenship. We disagree. Although the Supreme Court stated that any of the expatriating acts enumerated in the statute " 'may be highly persuasive evidence ... of a purpose to abandon citizenship,' " *Terrazas*, 444 U.S. at 261, 100 S.Ct. at 546 (quoting *Nishikawa v. Dulles*, 356 U.S. 129, 139, 78 S.Ct. 612, 618, 2 L.Ed.2d 659 (1958) (Black, J., concurring)), the Court noted that "the trier of fact must in the end conclude that the citizen not only voluntarily committed the expatriating act prescribed in the statute, but also intended to relinquish his citizenship." *Terrazas*, 444 U.S. at 261, 100 S.Ct. at 546. *See Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967).

We have long required a distinct manifestation of intent in addition to the mere performance of an expatriating act. As we noted in *United States v. Matheson*, 532 F.2d 809, 814 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976), "there must be proof of a specific intent to relinquish United States citizenship before an act of foreign naturalization or oath of loyalty to another sovereign can result in the expatriation of an American citizen." *See also Richards v. Secretary of State*, 752 F.2d 1413, 1420 (9th Cir.1985) ("In the absence of such an intent [to relinquish citizenship, a United States citizen] does not lose his citizenship simply by performing an expatriating act, even if he knows that Congress has designated the act an expatriating act.")

The evidence strongly supports the district court's finding that Rich had no intention whatsoever to relinquish his American citizenship prior to commencement of this action. Despite mouthing words of renunciation before a Spanish official, he refused to acknowledge such renunciation before the United States Consul in Madrid before this action commenced. Instead, he brought a Swiss action as an American national, travelled on his American passport, and publicized himself in a commercial register as a United States citizen.

### C. *Dual Nationality*

Rich argues that, in any event, he was a dual national of both America and Spain in 1982 and 1983, and as such was a foreign national for purposes of diversity. We disagree. In matters of diversity jurisdiction American citizenship will determine diversity. As the seventh circuit found in *Sadat v. Mertes*, 615 F.2d 1176 (7th Cir. 1980), "only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." We agree with the district court that it had subject matter jurisdiction.

## II. *VACATING THE DEFAULT*

Rich contends that even if the district court had subject matter jurisdiction, the default should be set aside to allow him to litigate on the merits. A motion to set aside a default judgment is in the sound discretion of the judge, " 'the person most familiar with the circumstances of the case and ... in the best position to evaluate the good faith and credibility of the parties.' " *Marziliano v. Heckler*, 728 F.2d 151 at 156 (quoting *Davis v. Musler*, 713 F.2d 907, 912 (2d Cir.1983)). The court must consider whether the default was willful, whether setting aside the default would prejudice the opposing party, and whether the moving party has shown that he may have a meritorious defense. *Marziliano v. Heckler*, 728 F.2d 151, 157 (2d Cir.1984); *Davis v. Musler*, 713 F.2d 907 (2d Cir.1983); *Meehan v. Snow*, 652 F.2d 274 (2d Cir.1981).

A default should not be set aside when it is found to be willful. *See In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138–1139 (2d Cir.1987); *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61 (2d Cir.1986). Rich admits he deliberately chose not to appear in the action because he faced possible indictment upon return to New York.

Vacating the default and requiring the plaintiffs to litigate the merits of their case now—eight years after they commenced this action and nine years after the events complained of—surely would cause irreparable prejudice. Early in these proceedings Rich was granted a stay of discovery. The

eight year delay, during which discovery was stayed, inevitably renders it difficult for plaintiffs to reconstruct and prove events which occurred almost a decade ago. *See Musler,* 713 F.2d at 916.

Rich has made no showing of a meritorious defense. Even if there were a trial on the merits, Rich admits he would not appear, either for discovery or for trial. He concedes that his non-appearance during earlier proceedings "was a severe handicap to the presentation of his position," and that his anticipated failure to submit to discovery in New York will allow "an adverse inference, a preclusion of proof or of a defense, or a default" during trial. Rich's anticipated refusal to appear undercuts any reason to believe he may succeed on the merits.

## III. *DAMAGES*

### A. *Compensatory Damages*

■ Rich argues that the court erred by awarding compensatory damages of $1,696,460.26 without a full evidentiary hearing. Judge Griesa conducted a year-long inquest on damages involving volumes of affidavits and lengthy oral argument from the parties, and denied a subsequent defense request for a full evidentiary hearing. He concluded that a full hearing "would just be prolonging this further, which I'm sure your client wishes to do...."

■ Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that on the matter of damages "the court *may* conduct such hearings or order such references as it deems necessary and proper...." (emphasis added). That rule allows but does not require the district judge to conduct a hearing. *See Fustok v. ContiCommodity Services, Inc.,* 873 F.2d 38, 40 (2d Cir.1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment."). Accordingly we have upheld an award of damages where " 'the District Court relied upon detailed affidavits and documentary evidence, supplemented by the District

Judge's personal knowledge of the record, gained during four years of involvement with the litigation....' " *Fustok,* 873 F.2d at 40. *See also Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944).

Judge Griesa was inundated with affidavits, evidence, and oral presentations by opposing counsel. In view of the long and tortuous history of these proceedings, he had "sufficient basis from which to evaluate the fairness of the ... sum." *Fustok,* 873 F.2d at 40. We see no reason to question his findings.

### B. *Interest*

■ The district court awarded prejudgment interest compounded quarterly using the London Interbank Offered Rate (LIBOR), rather than New York's simple statutory rate of 9%. The court found that it had "discretion, based on certain factors, to award the augmented prejudgment interest." Rich claims this was in error, and we agree.

Under New York law, courts must apply the statutory rate of interest, except "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." N.Y.Civ.Prac.L. & R. § 5001(a) (McKinney 1963). Because this is an action at law, the statutory rate of interest governs.

Plaintiffs suggest that their complaint is of an equitable nature, as it contains equitable claims for breach of duty and unjust enrichment. We have long held, however, that "the equity clause [of § 5001] should not become a source of sterile controversy over the classification of causes of action." *Spector v. Mermelstein,* 485 F.2d 474, 482 (2d Cir.1973) (quoting 5 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 5001.06, at 50–24 (1971)). *See also Lewis v. S.L. & E., Inc.,* 831 F.2d 37, 39 (2d Cir.1987) ("[E]ven on a claim with equitable underpinnings, such as one for breach of fiduciary duty, [the statutory rate of] prejudgment interest would be mandatory where the only relief sought was compensatory damages."); *United Bank Ltd. v. Cosmic Int'l, Inc.,* 542 F.2d

868, 878 (2d Cir.1976). The cause of action and damages requested were essentially legal in nature, and the court must apply the statutory rate of interest.

### C. *Punitive Damages*

Rich argues that the district court erred in awarding plaintiffs punitive damages of $500,000.00 without a full evidentiary hearing. The court found that "[t]he allegations are of deliberate misconduct, including fraud, which caused very substantial damage over the long term to plaintiffs," and that "the allegations ... which have been, in effect, admitted by the default, present a picture of conduct which would cause judges and juries, as a matter of standard practice, to consider seriously the award of punitive damages."

 Under New York law, punitive damages are appropriate in cases involving "gross, wanton, or willful fraud or other morally culpable conduct." *Borkowski v. Borkowski*, 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976) (mem). *See also Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118 (2d Cir.1986). Such conduct need not be directed at the general public. *Ostano Commerzanstalt v. Telewide Systems, Inc.*, 880 F.2d 642 (2d Cir.1989); *Roy Export Co. Establishment of Vaduz v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1106 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) ("New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, whether or not directed against the public generally." (citations omitted)).

 Judge Griesa was in the best position to determine whether or not the award of punitive damages was an appropriate remedy. He found that they were, and we defer to that finding. *Whitney*, 782 F.2d at 1119. Rich had stated, through counsel, that he would not appear for an evidentiary hearing on punitive damages. Given this statement, and the voluminous amount of evidence on record, Judge Griesa was fully justified in awarding punitive damages without a full evidentiary hearing. Because the award of punitive damages took into account the court's award of augmented prejudgment interest, however, we remand for recalculation of punitive damages as well as for recalculation of interest.

We have considered appellant's remaining arguments and find them without merit.

The judgment is affirmed in part and reversed and remanded in part.