15-2326
*Benjamin Roberts v. Sophien Bennaceur, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of August, two thousand sixteen.

PRESENT: CHESTER J. STRAUB,
RICHARD C. WESLEY,
DEBRA A. LIVINGSTON,
               *Circuit Judges.*

---

BENJAMIN ROBERTS,

          *Plaintiff-Counter-*
          *Defendant-Appellee,*

      v.                          No. 15-2326

SOPHIEN BENNACEUR, IMED BENNACEUR,

          *Defendants-Counter-*
          *Claimants-Appellants,*

TRIPLANET PARTNERS LLC,

*Defendant-Counter-Claimant*,

MOEZ BENNACEUR,

*Defendant*.

---

Plaintiff-Counter-Defendant-Appellee:   BRENDAN J. O'ROURKE (Lorey Rives Leddy, *on the brief*), O'Rourke & Associates, LLC, New Canaan, CT.

Defendants-Counter-Claimants-Appellants: ROGER JUAN MALDONADO (Nicole Haff, *on the brief*), Balber Pickard Maldonado & Van Der Tuin, PC, New York, NY.

Appeal from the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the District Court is AFFIRMED.

This case arises from a former business relationship between Plaintiff Benjamin Roberts ("Roberts") and Defendants Sophien Bennaceur ("Sophien"), Imed Bennaceur ("Imed"), and TriPlanet Partners LLC ("TriPlanet"), a Delaware company that is now in bankruptcy (collectively, "Defendants") . Sophien and

Imed are brothers, citizens and residents of Tunisia, and the managing members of TriPlanet. Roberts worked for TriPlanet as its Managing Director and serviced TriPlanet's primary client, the Royal Bank of Scotland ("RBS"), from August 2010 until he was terminated in June 2012. After his termination, Roberts brought suit against Defendants in the United States District Court for the District of Connecticut to recover millions of dollars in allegedly overdue equity payments and unpaid salary.

Following an evidentiary hearing, the District Court (Underhill, *J.*) used a Connecticut procedural device to issue Roberts a prejudgment remedy ("PJR") of $8,858,949. *See* Conn. Gen. Stat. §§ 52-278a *et seq.* Following the issuance of this PJR, and in the midst of numerous discovery disputes that followed, TriPlanet filed for bankruptcy in the United States District Court for the Southern District of New York and thereafter became subject to an automatic bankruptcy stay.

On March 31, 2015, the District Court (Meyer, *J.*)[1] issued an order ("March 31 Order") granting a motion by Roberts for sanctions against Defendants. In this March 31 Order, the District Court awarded Roberts a default judgment in the amount of $8,136,222.60 as a discovery sanction against Defendants. The

---

[1] The case was transferred on March 24, 2014 from Judge Underhill's docket to Judge Meyer's. Special App. 5.

3

March 31 Order did not decide certain of Roberts' claims, and although it stated that "default judgment shall enter," no separate docket entry was made.

On April 14, 2015, Roberts began taking steps to enforce the default judgment. On May 20, 2015, Defendants wrote a letter to the District Court Clerk stating that no judgment had been entered against them. In response, the District Court convened a teleconference and ordered the parties to submit letter briefs addressing the finality of the judgment.

On June 24, 2015, after considering the parties' submissions, the District Court issued a second order ("June 24 Order") ruling that the March 31 Order was intended to be final and that the June 24 Order constituted a separate document pursuant to Rule 58(a). The District Court then certified the default judgment as final under Fed. R. Civ. P. 54(b).

Defendants filed notice of appeal on July 22, 2015. They challenge the merits of the default judgment, the District Court's exercise of personal jurisdiction, and the finality of the March 31 and June 24 Orders.[2]

---

[2] We assume the parties' familiarity with the facts and record below, which we reference only as necessary to explain our decision.

## I.	Entry of Default Judgment as a Discovery Sanction

We review a district court's entry of a default judgment under Federal Rule of Civil Procedure 37(b) for an abuse of discretion. *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013). "Whether a litigant was at fault or acted willfully or in bad faith are questions of fact, and we review [a] [d]istrict [c]ourt's determinations for clear error." *Agiwal v Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (per curiam).

"When assessing a district court's exercise of its discretion pursuant to Rule 37, [this Court] generally look[s] to '(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned' that noncompliance would be sanctioned." *Guggenheim Capital*, 722 F.3d at 451 (quoting *Agiwal*, 555 F.3d at 302). "Because the text of the rule requires only that [a] district court's orders be 'just,' . . . and because [a] district court has wide discretion in imposing sanctions under Rule 37, these factors are not exclusive, and they need not each be resolved against the party challenging [a] district court's sanctions for us to conclude that those sanctions were within the court's discretion." *S.E.C. v.*

*Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013), *as amended* (Nov. 26, 2013) (citation and internal quotation marks omitted).

Rule 37(b) allows a district court "broad discretion in fashioning an appropriate sanction" to address discovery-related abuses. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002). This Court has outlined three purposes of discovery sanctions:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (internal quotation marks omitted). "Certain Rule 37 remedies—dismissing a complaint or entering judgment against a defendant—are severe sanctions, but they may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Guggenheim Capital*, 722 F.3d at 450–51 (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

Defendants argue on appeal that the District Court abused its discretion in awarding Roberts a default judgment of $8,136,222.60 as a discovery sanction

6

because it (1) "refused to consider the documents provided by [Defendants],"[3] Appellants' Br. 15–19; (2) "erred in its analysis of the financial documents [Defendants] produced and those financial statements that [Defendants] were unable to produce," Appellants' Br. 19–20; (3) "ignored TriPlanet's actual cost of sales," Appellants' Br. 20–21; (4) "awarded Roberts 25% of net profits based on Roberts' say so," Appellants' Br. 21–22; (5) "sanctioned [Defendants] for documents that had been produced or that were not in [Defendants'] possession, custody or control," Appellants' Br. 22–24; and (6) failed to hold an evidentiary hearing to determine damages, Appellants' Br. 24–27. Defendants claim further that "Roberts' settlement with TriPlanet would have been exposed during an evidentiary hearing and Roberts' concealment of this settlement provides a basis for this Court to vacate the amount awarded to Roberts on default." Appellants' Br. 27.

We disagree, concluding instead that the District Court properly exercised its discretion in entering a default judgment in the amount of $8,136,222.60 as a

---

[3] Although Defendants represented to the District Court that they had engaged KPMG to generate audited financial statements, Defendants never actually did so and instead hired an accounting firm called Raich, Ende, Malter & Co. to generate a "compilation summary" report ("Raich Report"). Additionally, Defendants presented to the District Court a financial statement prepared by an accountant named Ira Spiegel ("Spiegel Declaration").

discovery sanction against Defendants after two years of their repeated defiance of court orders.  Further, we conclude that the District Court properly considered the evidence produced by Roberts as to the amount of his damages.  In reaching these conclusions, we take careful note of the District Court's findings that, over a two-year period, Defendants willfully refused to comply with numerous court orders regarding financial discovery and disclosure of assets to satisfy the outstanding PJR Order.  We also acknowledge the District Court's express and detailed findings that Defendants offered "misrepresentations" and "inadequate explanations" on numerous occasions, thereby demonstrating "their bad faith throughout these proceedings."  Special App. 20–23.

Though the default judgment amount awarded to Roberts was considerably higher than that set forth in the Raich Report, the District Court reasonably determined that this report was based on deficient, self-serving information, and thus it was not an abuse of discretion for the District Court to credit Roberts' presentation and supporting evidence during the contested hearing on September 4, 2014.  The District Court described the Raich Report as "not an independent audit of TriPlanet's records but . . . allegedly a compilation derived from TriPlanet's internal financial records and with extensive

disclaimers about its reliability." App. 620. The District Court "ensured that there was a basis for the damages specified in [the] default judgment," *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (internal quotation marks omitted), by properly determining that its damages calculation was supported by "sufficient evidence," including "detailed affidavits and documentary evidence," *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Further, because it had a "sufficient basis from which to evaluate the fairness of the sum," *see Action S.A.*, 951 F.2d at 508 (alteration and internal quotation marks omitted), the District Court did not err in declining to revise its calculation in light of the Spiegel Declaration. The Declaration was submitted months after the September 4, 2014 default judgment hearing and relied on documents improperly withheld during discovery. The District Court properly found "no basis to conclude that [Spiegel's] calculations are correct" and gave "little evidentiary weight" to the Spiegel Declaration on the basis that it "(1) appears to challenge the individual [D]efendants' liability . . . , which has already been established by virtue of their default, and (2) its analysis relies on

9

documents that are the subject of defendants' discovery violations."  Special

App. 41 & n.8.  Indeed, had the Court revised its calculation in light of the

Spiegel Declaration, it would have risked "encourag[ing the very] dilatory

tactics" that Rule 37 sanctions aim to deter.  *S. New England Tel. Co.*, 624 F.3d at

149 (quoting *Cine Forty-Second St. Theatre*, 602 F.2d at 1068).

Throughout the proceedings, the District Court afforded Defendants

ample notice and opportunity to be heard, consistent with due process.  *Satcorp*

*Int'l Grp. v. China Nat. Silk Imp. & Exp. Corp.*, 101 F.3d 3, 6 (2d Cir. 1996) ("[D]ue

process requires . . . that the delinquent party be provided with notice of the

possibility that sanctions will be imposed and with an opportunity to present

evidence or arguments against their imposition."). The District Court's

awareness of the Settlement Agreement (or alleged lack thereof) is immaterial

because the terms of that Agreement specifically barred it from being considered

in the district court proceedings.[4]

---

[4] The Settlement Agreement included the express stipulation that it was "intended solely for purposes of settling all disputes between Roberts and [TriPlanet], and that it is not intended to impair, compromise, release or otherwise impact Roberts' recovery against Sophien and Imed Bennaceur in the Connecticut Action.  Further the parties stipulate[d] and agree[d] that neither Roberts nor [TriPlanet], shall utilize this [Settlement Agreement] in any other proceeding, including the Connecticut Action, for any purposes whatsoever."  App. Dkt. #35 (Ex. N at 10).  Roberts conditioned his acceptance of the Settlement Agreement on a separate escrow agreement ("Escrow

## II. Forfeiture of Personal Jurisdiction

A district court's determination that defendants waived or forfeited their personal jurisdiction defense is reviewed for an abuse of discretion. *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999).[5]

Federal Rule of Civil Procedure 12(h)(1) requires a party to raise a defense of lack of personal jurisdiction either by motion or in a responsive pleading; otherwise, the defense is deemed waived. *See* Fed. R. Civ. P. 12(h)(1). "The requirement that a court have personal jurisdiction is a due process right that may be waived either explicitly or implicitly." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998) (citing *Ins. Corp. of Ireland v. Compagnie*

---

Agreement") prohibiting the Settlement Agreement from being filed until after the District Court "decide[d] the finality of the Order of Default Judgment entered by the Connecticut District Court on March 31, 2015, pending before the District Court." App. Dkt. #35 (Ex. O).

[5] The District Court appeared to attribute Defendants' loss of their personal jurisdiction defense to "waiver." Nevertheless, the Court's opinion also referenced a second, distinct doctrine, "forfeiture." As we have noted, "[w]aiver is different from forfeiture." *Hamilton*, 197 F.3d at 61 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment of a known right.'" *Id.* (quoting *Olano*, 507 U.S. at 733). A party may, for example, waive a defense by failing to raise it in a motion or responsive pleading. *See* Fed. R. Civ. P. 12(h)(1). But even if a party has avoided waiver, that litigant may still forfeit a right or defense by forgoing subsequent opportunities to litigate that issue. *See id.* As discussed below, we conclude that, any waiver aside, Defendants forfeited this defense.

11

*des Bauxites de Guinee*, 456 U.S. 694, 703–05 (1982)). "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002); *see also Transaero*, 162 F.3d at 730 (upholding the preservation of a personal jurisdiction defense raised only in a footnote in the defendant's first responsive pleading).

Even if a party meets the requirements of Rule 12(h)(1), however, "[a] court will obtain, through implied consent, personal jurisdiction over a defendant if '[t]he actions of the defendant [during the litigation] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) (quoting *Ins. Corp. of Ireland*, 456 U.S. at 703). Furthermore, "a delay in challenging personal jurisdiction by motion to dismiss may result in waiver, even where the defense was asserted in a timely answer." *Hamilton*, 197 F.3d at 60 (alteration and internal quotation marks omitted). Similarly, a party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate

that right or defense.  In assessing whether waiver or forfeiture has occurred, "we consider all of the relevant circumstances."  *Id.* at 61.

In *Hamilton*, this Court found that the district judge had exceeded his allowable discretion in ruling that waiver of the defendant's personal jurisdiction defense had not occurred.[6]  *Id.*  Although in that case it was "undisputed that [the defendant] met the formal requirements of Rule 12(h)(1) by including in its answer the following sentence: 'The Court lacks personal jurisdiction over [the defendant],'" *id.* at 60, the defendant nevertheless "participate[d] in extensive pretrial proceedings" and failed to act on "numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer," *id.* at 59.

In reversing the district court's ruling that the defendant had not waived personal jurisdiction, the *Hamilton* panel observed that "[b]y withholding its motion, [the defendant] [was] gambl[ing] that it could raise the personal jurisdiction issue on the eve of trial, in case a trial occurred."  *Id.* at 62.  This gamble, coupled with defendant's "participat[ion] in pretrial proceedings but

---

[6] The district court in *Hamilton* used the term "waiver" in assessing whether the defendant had preserved its personal jurisdiction defense.  On appeal, "we note[d] that the issue is more properly considered one of forfeiture than of waiver."  *Hamilton*, 197 F.3d at 61.

[failure to move] to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer," led the panel to conclude "not only that [defendant] [waiv]ed its personal jurisdiction defense, but also that this [was] the rare case where a district judge's contrary ruling exceeds the bounds of allowable discretion." *Id.* at 62–63.

Here, similar to *Hamilton*, the District Court acknowledged and the parties do not dispute that Defendants technically complied with Rule 12(h)(1) by moving to dismiss. Appellee's Br. 29; Special App. 14. Unlike *Hamilton*, however, the District Court here ruled that Defendants had forfeited their personal jurisdiction defense by "engag[ing] in significant motion practice and pretrial discovery, including discovery on the merits, without including the defense in responsive pleadings," and further by "avail[ing] themselves of the opportunities afforded by Connecticut law by seeking a prejudgment remedy against plaintiff." Special App. 16.[7]

---

[7] Roberts emphasizes that "Appellants intentionally sought an affirmative remedy from the District Court to take advantage of the benefits of Connecticut state law—wholly apart from the assertion of counterclaims." Appellee's Br. 31.

In response, Defendants analogize their application for a PJR under Connecticut law to the filing of a compulsory counterclaim, which would not necessarily constitute a waiver or forfeiture of a personal jurisdiction defense because "[t]he weight of authority is that no Rule 12(b)(2) defense is waived by assertion of a counterclaim, whether

We find no abuse of discretion in this ruling. We agree with Roberts that Defendants forfeited their personal jurisdiction defense by "invoking the District Court's subpoena power by issuing two third-party subpoenas *duces tecum* to Roberts' former and (then) current employers in the State of Connecticut in order to obtain evidence to defend against Roberts' claim of fraudulent inducement; . . . compelling Roberts' deposition in Connecticut on merits-based subjects; and . . . entering into a Confidentiality Stipulation with Roberts that is expressly subject to the District Court's jurisdiction." Appellee's Br. 30–31. In our view, these activities constitute "participat[ion] in extensive pretrial proceedings" similar to that undertaken by the *Hamilton* defendant, which served implicitly to forfeit that defendant's lack of personal jurisdiction defense. *Hamilton*, 197 F.3d at 59.

Furthermore, in both *Hamilton* and this case, the defendants passed up on numerous opportunities to assert a personal jurisdiction defense. Specifically,

permissive or compulsory." Appellants' Br. 33 (citing Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 1397 (3d ed. 2005)). Defendants claim that their litigation and discovery activities did not forfeit their personal jurisdiction defense because they "were required by the rules of procedure to engage in discovery and they necessarily had to respond to Roberts' motion." Appellants' Br. 36.

The parties do not dispute that the assertion of a counterclaim does not waive a Rule 12(b)(2) defense. The crux of their disagreement regarding the PJR is whether the PJR is considered a counterclaim for these purposes. We need not conclusively resolve this issue here because regardless of whether the PJR is considered a counterclaim, we find that Defendants' other pre-trial activities sufficed to forfeit their personal jurisdiction defense.

15

Defendants here raised a personal jurisdiction defense in neither their answer nor their amended answer. Passing up on these opportunities while simultaneously participating in fairly extensive pre-trial proceedings, including discovery on the merits, suffices to forfeit Defendant's Rule 12(h)(1) defense.[8]

## III. The March 31 and June 24 Orders

### A. Finality

Federal Rule of Civil Procedure 58(a) states that "[e]very judgment and amended judgment must be set out in a separate document," notwithstanding certain exceptions inapplicable here. This separate document rule is "designed to reduce uncertainty on the part of an aggrieved party as to when the time to file a notice of appeal begins to run." *RR Vill. Ass'n Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987). Rule 58(a) "must be mechanically applied . . . to avoid new uncertainties as to the date on which a judgment is entered." *United States v. Indrelunas*, 411 U.S. 216, 221–22 (1973) (per curiam).

"[A] one-sentence order denying a motion satisfies the separate document rule." *RR Vill.*, 826 F.2d at 1201. "[A]n order that is part of an opinion or

---

[8] Defendants also argue that the District Court did not have personal jurisdiction over them. We need not reach this question, however, because we conclude that Defendants forfeited their personal jurisdiction defense.

memorandum, however, does not." *Id.* (citing, inter alia, Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 58). In this Circuit, a judgment must be explicitly labeled a "judgment" to be considered such. *Cooper v. Town of E. Hampton*, 83 F.3d 31, 34 (2d Cir. 1996); *cf. Kanematsu–Gosho, Ltd. v. M/T Messiniaki Aigli*, 805 F.2d 47, 49 (2d Cir. 1986) (per curiam) ("One clear way [of assuring notice] is to call a judgment a judgment.").

"Where an order appealed from clearly represents a final decision and the appellees do not object to the taking of an appeal, the separate document rule is deemed to have been waived and the assumption of appellate jurisdiction is proper." *Selletti v. Carey*, 173 F.3d 104, 109–10 (2d Cir. 1999). This waiver rule is premised on the separate document rule's overarching purpose to promote notice and reduce uncertainty:

> Certainty as to timeliness . . . is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, [a] district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose.

*Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385 (1978); *see also* 9 J. Moore, Federal Practice ¶ 110.08[2], p. 119–20 (1970) ("[I]t must be remembered that the rule is

designed to simplify and make certain the matter of appealability. It is not designed as a trap for the inexperienced. . . . The rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss.").

Defendants here argue that neither the March 31 Order nor the June 24 Order is an appealable final judgment because neither satisfies the requirements of Rule 58. Appellants' Br. 38–40. Roberts opposes Defendants' "attempt to dismiss their own appeal to the extent [Defendants] sought an advisory ruling that their appeal was premature, which finding would only cause delay and waste judicial resources." Appellee's Br. 47. Roberts does not, however, "oppose [Defendants'] filing their Notice of Appeal on grounds that it was premature" insofar as the appeal "challenge[s] . . . the merits of the District Court's default judgment." *Id.*

Because Roberts as Appellee does not object to the Defendants' taking of an appeal, we deem the separate document rule waived on the ground that dismissing the appeal for lack of appellate jurisdiction would serve no practical purpose. Roberts has not objected to appellate jurisdiction even despite some uncertainty as to whether a final judgment was successfully entered pursuant to the separate document rule. Sending the case back to the District Court

18

presumably would result in nothing more than the filing of another (timely) appeal, and thus dismissing for lack of appellate jurisdiction would cause "[w]heels [to] spin for no practical purpose." *Bankers Trust*, 435 U.S. at 385.

## B. Certification

A district court's finality determination under Federal Rule of Civil Procedure 54(b) is reviewed for an abuse of discretion. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980). Although federal policy generally disfavors piecemeal appeals, *see id.* at 8, Rule 54(b) provides an exception to this principle:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

"[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (quoting *Curtiss-Wright*, 446 U.S. at 8). "The determination of whether there is no just reason to delay entry of a final judgment is a matter

19

committed to the sound discretion of the district court."  *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998).

"[A] judgment expressly certified as final under Rule 54(b) is no less final for omitting a statement supporting a determination that there is no reason for delay.  Although we have remanded cases in which such a statement was lacking, we also have excused a failure to state reasons "[w]here the reasons . . . are obvious . . . and a remand to the district court would result only in unnecessary delay in the appeal process."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 355 (2d Cir. 2011) (citation omitted) (quoting *Fletcher v. Marino*, 882 F.2d 605, 609 (2d Cir. 1989)).

Defendants argue here that "[t]he District Court abused its discretion when it improperly certified the June 24 Order (and attempted to use the June 24 Order to add a Rule 54(b) certification to the March 31 Order), because both the March 31 and June 24 Orders left pending (a) claims against [Defendants], (b) claims against TriPlanet, (c) a counterclaim against Roberts concerning his employment agreement, and (d) claims against Moez Bennaceur."  Appellants' Br. 41–42.  According to Defendants, these claims "arise from the same operative

facts" and thus should have precluded the District Court from issuing a Rule 54(b) certification. Appellants' Br. 43–45.

Defendants also argue that "[t]he District Court abused its discretion when it attempted to . . . modify [substantively] the March 31 Order, *nunc pro tunc*: (1) to include a Rule 54(b) certification that was not present in the March 31 Order, and (2) to convert the March 31 Order into a judgment." Appellants' Br. 48. Though recognizing that "appellate courts have permitted a district court to enter a *nunc pro tunc* order to affix a Rule 54(b) certification," Defendants attempt to distinguish those cases from theirs while claiming "it is obvious that the District Court improperly sought to prevent the appeal of its . . . March 31 Order by declaring that it was a 'judgment' as of March 31, 2015—in June 2015." Appellants' Br. 50–51.

Roberts responds that even though "the March 31 Order does not include certain talismanic language required by Rule 54(b)," it nevertheless can be deemed a final judgment because the District Court plainly intended it to be such. Appellee's Br. 49 (citing *Guggenheim Capital*, 722 F.3d at 449, for the proposition that "a decision is final when the court clearly intends to close the case, i.e., to enter a final judgment" (internal quotation marks omitted)). Roberts

further argues that "the 'live' claims [Defendants] contend remained unresolved before the District Court plainly had been subsumed into proceedings in the Bankruptcy Court, and were no longer before the District Court." Appellee's Br. 50–51. Finally, Roberts argues that even if the March 31 Order was not a final judgment under Rule 54(b), it was certified as such in the June 24 Order by the language stating, "in light of the inherent purposes of a default judgment to preclude further delay, that there is no just reason for delay such that final judgment shall enter as indicated above against defendants Sophien and Imed Bennaceur." Appellee's Br. 51 (quoting Special App. 44).

We conclude that the District Court did not abuse its discretion in issuing the June 24 Order to (1) clarify that its March 31 Order was intended to be final and (2) certify the March 31 Order under Rule 54(b). We agree with Roberts that Defendants "mischaracterize[] the circumstances presented here, where the judgment against [Defendants] was premised not on merits-based findings of liability as to the underlying wage, breach, and fraud claims, but as a sanction under Rule 37(b), entered as a result of [Defendants'] bad faith and intentional misconduct." Appellee's Br. 53. This means—even assuming the claims left pending in the March 31 Order had not been subsequently resolved in the

22

Bankruptcy Court—that a remand to the District Court "would result only in unnecessary delay in the appeal process." *Brown*, 654 F.3d at 355 (internal quotation marks omitted). Moreover, there is no danger that piecemeal appeals will occur in this case because the Defendants' appeal relates not to the merits of Roberts' claims against them, but instead to whether the District Court abused its discretion in entering the $8,136,222.60 default judgment against them.

Further, we find no merit in Defendants' argument that the District Court could not have used the June 24 Order to *nunc pro tunc* render the March 31 Order a final judgment. The District Court issued the June 24 Order merely to clarify its intent to render a final judgment in its March 31 Order, not to modify any substantive part of the judgment that it clearly intended in the March 31 Order. This type of correction is permissible under Federal Rule of Civil Procedure 60(a), which allows the District Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."[9]

---

[9] This Court has held that "a Rule 60(a) motion is appropriate 'where the judgment has failed accurately to reflect the actual decision of the decision maker.'" *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 504 (2d Cir. 2007) (quoting *In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir. 1986)); *see also Dudley v. Penn-America Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002) (construing and granting motion to correct "a judicial oversight, namely the district court's failure to include the monetary award in the Original

We have considered all of the parties' remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the District Court.

<div style="margin-left: 50%;">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

</div>

---

Judgment" under Rule 60(a)). Though these cases typically deal with awards of prejudgment interest inadvertently omitted from initial judgments, there is no reason the same basic rationale should not apply equally in this situation. In *Robert Lewis Rosen*, for example, a case in which this Court allowed a district court to correct a judgment to reflect its "clear intention . . . to confirm [an] arbitration award in its entirety," 473 F.3d at 504, this Court explicitly declined to "endorse so narrow a view" that Rule 60(a) "permits only corrections to errors or mistakes in the transcription of judgments, not in the rendering of judgments," *id.* at 505 n.11. We similarly decline to endorse such a narrow view here.